THE STATE, CLAUDIUS W. BRADSHAW, PROSECUTOR, v. THE CITY COUNCIL OF THE CITY OF CAMDEN.

1. Where a person is in possession of an office, and the common council unlawfully elects his successor, and thereby threatens to disturb him in the enjoyment of his term, *certiorari* is the appropriate remedy to review such action. The object of prosecuting a *quo warranto* is to have one in possession adjudged guilty of usurpation. The relator in this case sues for no such end; his only purpose is to remove from his way a proceeding which he apprehends may be used unlawfully to eject him.

2. Under the ordinances of the city of Camden now in force, the chief engineer of the fire department holds his office for the term of three years.

On *certiorari*.

Argued at February Term, 1877, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff, *Charles T. Reed* and *R. S. Jenkins*.

For the defendants, *S. H. Grey*.

The opinion of the court was delivered by

VAN SYCKEL, J. On the 30th of March, 1876, Bradshaw was elected, at a regular meeting of the Camden city council, chief engineer of the Camden fire department. On the 5th of the following April his official bond was duly approved by the council, and on the 29th of the same month he entered upon the duties of his office, and has, since that time, occupied and held it.

On the 20th day of March, 1877, the city council, claiming the right to elect his successor, elected Robert S. Bender to the same position. No complaint was made against Bradshaw—no notice was given to him of the contemplated action of council, and Bender has not taken possession of the office.

The only questions in the case are: *First*. Whether the action of the common council can be reviewed by *certiorari*: *Second*. Whether, under existing ordinances, Bradshaw held his office for the term of three years.

If the title of a claimant in possession of the office was to be tried, it would be necessary to resort to a *quo warranto*, but the relator in this case being in possession of the office, the proceedings taken by the common council, threatening to disturb him in the enjoyment of it, can be reviewed only by *certiorari*. The object of prosecuting a *quo warranto*, is to have one in possession adjudged guilty of usurpation. The plaintiff in this case sues for no such end ; his only purpose is

to remove from his way a proceeding which he apprehends may be used unlawfully to eject him.

The second question turns upon the construction of three ordinances of the common council, relating to the office in controversy. The first, passed September 2d, 1869, ordains that the council shall appoint one fire marshal, who shall be a resident of Camden city; and in case of his death, resignation, disqualification or removal, or his neglect or refusal to perform the duties of his office, council shall fill his place by a new appointment; that he shall hold his office during good behaviour, and subject at any time to removal for incapacity or neglect of duty; that he must qualify by taking an oath to perform his duty faithfully and impartially, and that he shall receive a salary of $800 per annum, payable monthly.

A supplement, passed September 26th, 1872, provides that the fire marshal shall be elected at the stated meeting of council in 1872, and every third year thereafter; that he shall give bond in the sum of $500, and that he may be removed by council, for incapacity, neglect or other good cause, four fifths of council voting in the affirmative.

On the 29th of May, 1873, a third ordinance was passed, entitled "A supplement to an ordinance entitled 'An ordinance to establish a paid fire department in the city of Camden.'" The first section provides that immediately after the passage of this ordinance, one chief engineer of the Camden fire department shall be appointed by council, who shall perform the same duties, take the same oath, and be liable to the same penalties as are prescribed for the fire marshal in the ordinance to which this is a supplement. The ordinance further provides that the fire department shall consist, among others, of one chief engineer and one assistant engineer, the salary of the chief to be $800 per annum, payable monthly, and that all ordinances and parts of ordinances inconsistent therewith be repealed.

It being competent for the legislature to delegate to municipal corporations the power to pass ordinances of this character, which have the force, as to persons bound thereby, of

legislative enactments, they should be interpreted by the same rules which govern courts in the construction of legislative acts.

Valid ordinances of municipal corporations are as binding on the corporators and the inhabitants of the place, as the general laws of the state upon the citizens at large.    1 *Dillon on Mun. Corp.*, § 246, *note* (1); *Hopkins* v. *Mayor, &c.*, 4 *M. & W.* 640.

By the established rule, these several ordinances must be so interpreted that they may, if possible, all stand together. They must be harmonized, so far as may be consistent with a reasonable and just construction.    They must, in all their parts, be accepted as the declared will of the council, except in so far as they have manifested an intention to reject them. By virtue of the last ordinance, there ceased to be an officer in the city designated as the fire marshal, but a chief engineer was to be appointed to perform the same duties, take the same oath, to be subject to the same penalties, and to receive the same salary.

The question is whether it was the intention of the common council to withdraw the office of chief engineer from the operation of any part of the prior ordinances, so far as they were applicable to his functions.    As to the fire marshal, did this ordinance have any effect other than to change his official name?    The provision is, that immediately after the passage of the ordinance, the council shall appoint one chief engineer. So far as this ordinance, standing by itself, is concerned, the power to appoint is restricted to the single occasion immediately after its adoption.    No power is given to appoint his successor, no right is reserved to remove for official misconduct, except by reference to prior ordinances, and his tenure of office is not prescribed.

It could not have been the intention of the common council to deprive themselves of these powers so essential to the proper control of this department of the city government.    It would require the clearest and most explicit language to give the last ordinance so sweeping an operation.    The chief en-

gineer being invested with precisely the same powers which had been entrusted to the fire marshal, it will not only be consistent with the last ordinance to hold that the term of office fixed by the ordinance of 1872 is applicable to him, but it is absolutely necessary so to construe it, in order to preserve to the common council the power to maintain the existence of this department in its established form.

The contrary interpretation would be an unreasonable one.

That it was the intention simply to change the name by which the officer was to be designated, is made quite clear by the provision that the chief engineer shall be liable to the same penalties prescribed for the fire marshal. One of those penalties prescribed by the prior ordinance was, that the fire marshal should be subject to removal by the council, before the expiration of his three years' tenure, for incapacity, neglect or other good cause. If it was intended that the chief engineer should hold his station merely at the will of the common council, it would have been wholly unnecessary to bring him within the operation of this punitive clause.

I think, therefore, that when Bradshaw was elected on March 30th, 1876, after the passage of the last ordinance, and after one appointment under it, the common council acted, not under that ordinance, which gave them power only to make a single appointment, but under and by virtue of the first section of the ordinance of September, 1872, which ordains that he shall hold for three years. He is still in possession of an unexpired term, holding not by force of a contract with the city, but by virtue of an ordinance which is the law of the city.

The power to remove him for cause could be exerted only after he had an opportunity to defend himself, which was not accorded in this case. *Haight* v. *Love*, 10 *Vroom* 14.

The suggestion that the relator was elected before there was a vacancy by the expiration of his predecessor's term, and that, therefore, he is an intruder without title to the office, and not in a position to challenge the action of council, cannot be considered now. He has been in possession of the

office for more than a year, by assent of the common council, under color, at least, of an election by them, and therefore his right to retain the office can be litigated only by *quo warranto*.

The proceedings certified in this case should be set aside, with costs.